JS-6

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| THOMAS O'DELL,<br><br>　　　Plaintiff,<br><br><br>　　　vs.<br><br>WESLEY LEE, ET AL.,<br><br>　　　Defendants. | Case No.: ED CV 15-00146-DOC (SPx)<br><br><br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT [60]** |

Before the Court is the Motion for Summary Judgment filed by Spectrum Security Services, Inc. ("Motion") (Dkt. 60).

I. Facts [1]

A. Thomas O'Dell's Termination

Spectrum Security Services, Inc. ("Spectrum" or "Defendant") is in the business of contracting with federal agencies to provide security officers to take and maintain custody of, and transport, federal prisoners and detainees on an on-call basis. Spectrum's Statement of Uncontroverted Facts ("SUF") (Dkt. 60-1) No. 1. In December 2012, Thomas O'Dell ("O'Dell" or "Plaintiff") was working for Spectrum supervising security officers at the U.S. Immigration and Customs Enforcement ("ICE") Adelanto Detention Facility. SUF Nos. 7–8. While O'Dell was working for Spectrum, he understood that all Spectrum Officers were employed at-will and worked on an on-call basis, there were no preset assignments, and that officers must be able to respond within two hours of receiving an assignment. SUF Nos. 3–6.

On December 27, 2012, O'Dell met with Wesley Lee ("Lee"), the ICE Assistant Field Office Director who was in charge of the ICE operations at the Adelanto facility, to discuss operations. Lee was upset, threatened O'Dell, and accused O'Dell of improper conduct, which O'Dell denied. During the meeting, O'Dell understood Lee was planning to retire in about a year. SUF Nos. 9–10, 21.

On January 15, 2013, Lee directed Spectrum to remove O'Dell from working at the Adelanto facility. Under Spectrum's contract with ICE, Spectrum was required to do as ICE requested concerning personnel, including removing officers such as O'Dell. SUF Nos. 12–13. On January 17, 2013, O'Dell's supervisor at Spectrum, Henry Lewis ("Lewis"), told O'Dell he was "suspended pending an ICE investigation." SUF No. 14.

On January 29, 2013, Lewis met with O'Dell and gave him a letter, informing O'Dell he had been laid off. The layoff letter states in relevant part: "If after six months, ICE Adelanto operations have not resumed to a level that requires your recall, the layoff will become a permanent termination of employment." O'Dell's Statement of Genuine Dispute of Material

---

[1] Unless otherwise noted, cited evidence is either undisputed and not objected to or is objected to and any objection is overruled.

Facts ("SDF") (Dkt. 65) No. 17; Spectrum's Reply Statement of Uncontroverted Facts ("Reply SUF") No. 17. Six months was the amount of time that O'Dell could be away from work without automatically losing his government security clearance. SUF No. 20. The letter also included an offer to work at Spectrum's San Diego facility. SUF No. 19. O'Dell admits no oral representations were made to O'Dell about future work at Adelanto Detention Facility. SUF No. 18.

After January 29, 2013, O'Dell turned down Spectrum's offer to work in San Diego. SUF 24. O'Dell testified the reason he turned down the offer was that because he lived in Chino, it was "impossible" for him to commit to being able to respond to an assignment in San Diego within two hours. SUF No. 25.

On February 11, 2013, Lee and Dan Pomplun ("Pomplun"), the ICE Contracting Officer's Representative, met with Spectrum CEO Sam Ersan. Lee and Pomplun requested that Spectrum provide ICE with a document reflecting that O'Dell would never be re-hired by Spectrum. SDF No. 33; Reply SUF No. 33. After the meeting, Spectrum prepared a letter as instructed, reflecting that Plaintiff was no longer eligible for re-hire at Spectrum. SDF No. 34; Reply SUF No. 34.

### B. Procedural History

On January 23, 2015, O'Dell filed a lawsuit against Spectrum and Lee. The operative complaint – O'Dell's Second Amended Complaint ("SAC") (Dkt. 52), which was filed on – alleges claims of fraud and negligent misrepresentation against Spectrum. Spectrum filed its Motion for Summary Judgment seeking adjudication of these causes of action.[2] O'Dell opposed on March 28, 2016 (Dkt. 65), and Spectrum replied on April 4, 2016 (Dkt. 67).

### II. Legal Standard

Summary judgment or partial summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due

---

[2] The Court notes that Lee, a named Defendant in the suit, filed a Motion for Summary Judgment on March 14, 2016 (Dkt. 61). Plaintiff, however, stipulated to dismiss the claims against Lee on April 11, 2016 (Dkt. 68), which the Court granted the same day (Dkt. 69). Therefore, the Court only analyzes Spectrum's Motion.

1 respect for a party's right to have its factually grounded claims and defenses tried to a jury.
2 *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
3 242, 255 (1986). The court must view the facts and draw inferences in the manner most
4 favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962);
5 *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears
6 the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it
7 need not disprove the other party's case. *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. Whether a fact is material is determined by the substantive law governing the claim or defense. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is required only to consider evidence set forth in the moving and opposing papers and in the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III.   Discussion

#### A. Legal Standard for Fraud and Negligent Misrepresentation Claims

To prevail on a fraudulent misrepresentation or omission claim, a plaintiff must prove (1) a knowingly false representation or fraudulent omission by the defendant; (2) intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages. *See Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003) (stating that in California, fraud

1  claims have five elements: "(a) misrepresentation (false representation, concealment, or
2  nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce
3  reliance; (d) justifiable reliance; and (e) resulting damage").

4  The elements of negligent misrepresentation are similar to those of fraud but require a
5  different level of scienter: the plaintiff must prove the defendant made the representation
6  without any reasonable ground for believing it to be true. *Friedman v. Merck & Co., In.*, 107
7  Cal. App. 4th 454, 457–76 (2003).

### B. Representations Regarding O'Dell's Ability to Return to Adelanto

O'Dell argues that Defendant made a false, material representation in its January 29, 2013 layoff letter, which states in relevant part: "If after six months, ICE Adelanto Operations have not resumed to a level that requires your recall, the layoff will become a permanent termination of employment." SDF No. 17; Reply SUF No. 17.[3]

O'Dell contends this statement represents there was a possibility he would be rehired at the Adelanto facility in the following six months, even though ICE and Spectrum had deemed him ineligible for future employment at that facility. Spectrum argues the letter does not actually include *any* statements regarding the possibility of O'Dell's reassuming his position at Adelanto. Rather, Spectrum argues the plain language of the letter merely sets forth the consequences that would arise if O'Dell was *not* recalled to Adelanto within six months, and this was implicitly in reference to when his government clearance would expire. The Court agrees the letter does not make any explicit representations O'Dell would be hired in the future. At best, there is a slight chance a reasonable jury could read the conditional form of the letter – in other words, the fact the letter considers the outcome *if* O'Dell was not recalled – to contain the implicit representation that O'Dell *could* be rehired within those six months, however slim the possibility.

An implied representation cannot support a negligent misrepresentation claim, however. *Weissich v. Cnty. of Marin*, 224 Cal. App. 3d 1069, 1083 (1990) ("[A] cause of action for

---

[3] O'Dell testified that although Lewis read the letter at their meeting, they did not discuss anything besides the fact that if O'Dell did not work for Spectrum for six months, his clearance with ICE would no longer be effective and he would have to go through the clearance process again. SUF No. 18. Thus, the only alleged misrepresentation is the portion of the layoff letter quoted above.

1 negligent misrepresentation requires a positive assertion and does not apply to implied
2 representations.") (citing *Yanase v. Automobile Club of So. Cal.*, 212 Cal. App. 3d 468, 472–73
3 (1989)); *see also UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092,
4 1111 (C.D. Cal. 2015) ("[U]nlike fraud, negligent misrepresentation requires a positive
5 assertion to show a misrepresentation of material fact; an omission or an implied assertion will
6 not suffice," *Cutler v. Rancher Energy Corp.*, No. CV 13–00906 DOC, 2014 WL 1153054, at
7 *7 (C.D. Cal. Mar. 11, 2014)). Summary judgment on O'Dell's negligent misrepresentation
8 claim must therefore be granted in favor of Spectrum.

9 However, for a fraud claim, "[a] misrepresentation need not be oral; it may be implied
10 by conduct." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1198 (quoting *Thrifty-Tel,*
11 *Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1567 (1996) ("A misrepresentation need not be oral; it
12 may be implied by conduct.").

13 Nonetheless, even if the possibility that O'Dell may be rehired in the future could be
14 implied from the letter, Plaintiff offers no evidence this implied representation was actually
15 false. None of Plaintiff's evidence establishes that as of January 2013 there was no possibility
16 he would be recalled to Adelanto for the following six months. *See* Opp'n at 9; Deposition of
17 Henry Lewis ("Lewis Depo.") (Dkt. 65-7) at 111:23–112:4. Although the parties do not dispute
18 Spectrum prepared a letter after O'Dell turned down the San Diego position in February 2013
19 that reflected that O'Dell was no longer eligible for re-hire, SDF Nos. 33–34, Plaintiff has
20 offered no evidence this was Spectrum's intention in January 2013. Indeed, O'Dell concedes
21 his termination was instigated by Lee. SDF No. 12. The fact that Spectrum's CEO, Ersan,
22 disagreed with Lee's decision, indicates that as of January 2013 there was some possibility
23 O'Dell could be recalled within six months if Lee left during that time period. *See* SDF No. 12.

24 At best, O'Dell's evidence shows the probability Lee would leave within six months and
25 O'Dell would therefore be able to resume his employment was low. This is not enough to
26 render defendant's representation false, however. First, as discussed above, the implied
27 representation that O'Dell could be recalled within six months does not indicate or promise any
28 particular probability of such an event occurring. Thus, even if the probability O'Dell would

resume employment at Adelanto was very slim, this would not render the representation there was *some* probability of his return false.

Second, promises regarding the probability of a future event occurring cannot support a fraudulent or negligent misrepresentation claim because they are deemed to be mere opinions, which are not actionable. *See Stockton Mortgage, Inc. v. Tope*, 233 Cal. App. 4th 437, 458 (2014) (Mar. 25, 2015) ("A representation generally is not actionable unless it is about past or existing facts (internal quotes omitted)); *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 309-10 (2000) ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions"). Thus, the January 2013 letter does not constitute an implied misrepresentation of fact, and O'Dell's fraud claim must fail.

Finally, even if the letter contained a misrepresentation of fact, O'Dell's claim against Spectrum fails because no reasonable jury could find O'Dell's alleged reliance was reasonable. As discussed above, the letter states: "If after six months, ICE Adelanto Operations have not resumed to a level that requires your recall, the layoff will become a permanent termination of employment." This is a vague implication at best; no reasonable jury would find it was objectively reasonable for O'Dell to believe he would be reemployed at Adelanto and to reject an alternate offer of employment solely in favor of this belief. O'Dell's assumption he would be able to return to Adelanto is also particularly unreasonable given that a representative of the ICE Adelanto Operations recently threatened and accused O'Dell of improper conduct. SUF Nos. 9–10.

The Court therefore GRANTS Spectrum's motion for summary judgment on Plaintiff's fraudulent and negligent misrepresentation claims, as they relate to Spectrum's alleged representations about O'Dell's ability to return to work in Adelanto.[4]

---

[4] Because the Court dismisses Plaintiff's claims on this basis, it need not consider the parties' arguments regarding whether O'Dell actually relied on the January 2013 letter, or whether O'Dell had reason to know of the letter's alleged falsity. The parties also argued at the hearing whether or not the layoff letter's statement there was a realignment of the supervisory staff at Adelanto was false. *See* Mot. at 9; Opp'n at 7–8; Reply at 6. At the hearing Plaintiff asserted this was an additional false statement of fact that should give rise to liability. Plaintiff's argument fails, even without resolving the parties' factual dispute as to the representation's falsity, as there are no allegations Plaintiff acted in reliance on the fact there was a realignment of supervisory staff.

### C. Representations Regarding O'Dell's Ability to Find Work in Los Angeles or Orange County

Plaintiff additionally argues Defendant made a material misrepresentation by not informing him of the fact he was ineligible to work in Santa Ana or Los Angeles, and that his only option was San Diego. Nowhere in the SAC does O'Dell mention employment in Santa Ana or Los Angeles, nor does the second amended complaint contain a material omission claim. As Spectrum correctly notes, Plaintiff cannot assert a new legal theory in his opposition to a motion for summary judgment. The "complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000). Thus, "[a] plaintiff cannot raise a new theory of liability in the plaintiff's opposition to a motion for summary judgment or summary adjudication." *Torres v. City of Madera*, 655 F. Supp. 2d 1101, 1128 (E.D. Cal. 2009) (citations omitted). Defendant had no reason to believe it should conduct discovery or marshal evidence concerning a material omissions claim. Therefore, to the extent O'Dell intends to raise a material omissions claim at this stage, the court grants summary judgment of that claim in favor of Spectrum.

**IV. Disposition**

Based on the foregoing, the Court GRANTS Spectrum's Motion for Summary Judgment.

_/s/ David O. Carter_
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Dated: April 22, 2016